## EMERANCE GROSLOUIS *v.* S. NORTHCUT.

DONATION LAW.—JUDICIAL SALE.—A claimant under the donation law, may, before patent issues, obtain such an interest in the land as will be subject to judicial sale.

STIPULATION.—In construing a stipulation filed in the cause, the intention of the parties is to be determined from the language used in the written stipulation. A stipulation that the party was divorced in a designated suit is, in effect, an admission that the court had jurisdiction to grant the divorce.

DIVORCE.—POWER OF THE COURT.—Whether, under the act of 1854 concerning divorce, the court had power to transfer, in fee, the lands of a party to the children. *Query?*

IDEM.—PLEADINGS.—In a divorce suit where the pleadings make no reference to the property, the court cannot render a valid decree transferring from the wife to the children of the parties an estate in fee simple in a particular parcel of land.

PRESUMPTION OF JURISDICTION.—Every reasonable intendment will be invoked in support of the judgment or decree of a court of general jurisdiction.

INCIDENTAL POWER.—PLEADING.—Special disposition of the real estate of the parties, although incidental to the subject of the divorce, is within the provisions of the code requiring the complaint to state facts.

PLEADING.—DECREE, WHEN VOID.—After a decree has become final, any colorable statement of facts is sufficient to prevent the decree from being held void, but there must be some statements sufficiently general to comprehend the requisite facts by fair intendment. If there is nothing in the facts stated in the pleadings that would, if denied, render proofs necessary, no intendment in favor of the decision will arise to aid or supply an omission of essential facts.

THIS is an action of ejectment for the north half of a parcel of land known as the Petit land claim. The plaintiff was formerly the wife of Hubert Petit, but he obtained a decree of divorce against her in a suit commenced in 1857. Prior to that time Hubert Petit and his said wife were settled upon said land claim, and in 1871 a patent was issued in pursuance of their settlement and claim, granting to the said Hubert Petit the south half of said land claim, "and unto his wife, the said Emerance Petit, an l to her heirs, the north half." The plaintiff claims title under this patent.

The defendant, to establish title in himself, claims that

by the decree in the suit for divorce, the title to the north
half of the tract was vested in two minor children of the
said Hubert and of this plaintiff, and that afterwards a
guardian was appointed by the probate court, and the
premises sold at a guardian's sale to the defendant.

By a stipulation on file the following facts are admitted:
Prior to September, 1857, the plaintiff was the wife of
Hubert Petit, and she is now the wife of Peter Groslouis.
In September, 1857, said Hubert and this plaintiff were
divorced by a decree, of which exhibit "S" is a copy.
They then had two children, named Adelaide and Josephine
Petit, and were owners of the said land claim. It was also
expressed in the stipulation that the "plaintiff does not
waive any objections she may have or desire to make to the
validity, legality or sufficiency of any of the records pro-
duced by the defendant."

A jury trial was waived. The plaintiff introduced the
patent and rested her case. The defendant offered exhibit
"S," which was objected to by the plaintiff. It consists of
a copy of a complaint and decretal entry in the case of *Petit*
v. *Petit.* In the complaint Hubert Petit alleges facts, suffi-
cient, if true, to constitute a cause of divorce against this
plaintiff, but the complaint contains no allegations concern-
ing land, nor any reference to property. It is entitled:

"In the district court of the first judicial district of Ore-
gon Territory, Marion County, September term, 1857." The
decretal entry is as follows:

"*Hubert Petit* vs. *Emerance Petit,* divorce—September 29,
1859.

"Now on this day it appearing that a decree had hereto-
fore been rendered in this cause at the September term
thereof, 1857, and that said decree had not been entered,
and it further appearing that defendant had been served by
publication as required by law—it is ordered that said de-
cree be entered *nunc pro tunc.* It is therefore ordered that
the bonds of matrimony heretofore existing between the
parties be dissolved, and that said Hubert have the exclu-
sive custody of the two children, the fruit of said marriage,
namely: Adelaide and Josephine, and that the north half of

the land claim of said parties, being the part of said claim set apart to said defendant by the surveyor-general, be decreed to and the right and title thereof be vested in the said children, and plaintiff pay costs."

The defendant also offered copies of the records and files, showing all the proceedings in the county court under which the land was sold, from the petition for the appointment of a guardian for the minor children above named filed May 8, 1869, to the deed of the guardian, dated Aug. 26, 1869, inclusive. The plaintiff objected to this evidence upon various grounds, and the decision of the points as to the admissibility of the testimony was reserved.

*Sullivan & Thompson* and *R. Williams,* for the plaintiff.

The legal title did not pass from the government until the actual issuing of the patent. (Donation law sec. 8, 13; Pet. 499.)

Nothing less than a deed of the donee, containing covenants, is a good defense in ejectment against her patent. (3 How. 627; 3 John. Ch. 148.)

The complaint in the divorce suit is insufficient. The decree was made without authority and is void. (Comp. L. 1855, p. 538, secs. 7 and 8.)

The court had no power to vest title in the minor children. (*Fitch* v. *Durand,* U. S. circuit court dist. Oregon; 4 Iowa, 26; 4 Hill, 140.)

The proceedings in the probate court are insufficient. (Code p. 671, sec. 2; 2 Mass 414; 4 Ib. 97; code 880, secs. 6, 10 and 11.)

*Rufus Mallory,* for the defendant.

UPTON, J., delivered the following opinion:

The plaintiff having introduced a patent from the United States, the burden of proof is on the defendant; and the questions to be determined relate principally to the admissibility and to the effect of the proofs offered by the defendant.

The first point made in the plaintiff's brief, if sustained,

would be a conclusive objection to all the defendant's evidence, and to the facts set up in the answer.

This point is, that the legal title remained in the United States until the patent issued in 1871, and that up to that time neither the plaintiff nor any other person had any interest that could be the subject of a judicial sale.

I am unable to deduce, from the authorities cited, the conclusion that under the donation law the legal title does not pass to the donee by operation of the statute. It has frequently been held that a legislative grant is as effective to pass a title to land, in all respects, as a grant evidenced by a patent. (*Kernan* v. *Griffith*, 27 Cal. 87.)

The plaintiff's counsel cite *Wilcox* v. *Jackson* (13 Pet. 499), to sustain the position that, because the donation law provides for issuing a patent, the title does not pass until the patent issues. The circumstance that by the preëmption act of 1836, under consideration in that case, patents are to issue in preëmption cases, is there referred to as affording an inference or argument, that under the preëmption-laws "a perfect and consummate title" will not pass except by a patent.

The preëmption acts contain no words of present grant, and it is not said in that case, and I think it is not said by that court in any case, that where the statute grants lands by words of present grant, and also provides for issuing a patent at a future time, the title will not pass until the patent issues. On the contrary, statutes that contain words of present grant are expressly excepted from the general rule there stated.

In that case the contest was between the assignee of a preëmptioner, holding a preëmption certificate, and a military officer in possession, "claiming no right of ownership, but as an officer of the United States only, in command of said post, acting under the orders of the secretary of war, his superior officer, and the United States." One of the points decided in the case was that the land was a military reservation, and consequently not subject to preëmption; and a further deduction was that it was not a subject within the jurisdiction of the register of the land-office, and that

for 'that reason the register's decision and his certificate
were void. It was in commenting upon such a case that
Judge Barbour used the following language: "With the
exception of a few cases, nothing but a patent passes a
perfect and consummate title. One class of cases to be
excepted is, where an act of Congress grants land, as is
sometimes done, in words of present grant. But we need
not go into these exceptions. The general rule is what we
have stated, and it applies as well to preëmptions as to other
purchases of public lands. Thus it will appear by the very
act of 1836, which we have been examining, that patents are
to issue in preëmption cases. This, then, being the case,
and this suit having been in effect against the United States,
to hold that the party could recover as against them, would
be to hold that a party having an inchoate and imperfect
title could recover against the one in whom resided the per-
fect title." I do not deem this language a decided indica-
tion that Judge Barbour thought a provision for the subse-
quent issuing of a patent would have controlled words of
present grant. On the contrary, I think that opinion
recognizes what was then a settled doctrine of that court,
that an act of Congress, couched in words of present grant,
was sufficient to pass the legal title.

I have been unable to see what bearing the case of *Living-
ston* v. *Livingston*, (3 John. Ch. 148,) has upon this question.

The remaining case to which the plaintiff refers, is that
of *Price* v. *Sessions* (3 How. 124). Property, real and per-
sonal, was devised to a daughter, to remain in the posses-
sion of executors until the daughter should arrive at the age
of eighteen years; if she should die without heirs before
arriving at that age, the property to go to certain other per-
sons. When the daughter was about sixteen years of age,
the executor who had the property in possession, married
the daughter, and before she arrived at the age of eighteen,
a law was passed securing to married women their property,
free from the husband's debts. A portion of this property
(which seems to have been slaves) was seized on execution
for the husband's debt. It was held that the person who
had married the devisee was in possession of the property

not as husband but as executor. And that for that reason, that is, because the property had never been delivered to the devisee, the title had never vested in her. It is not a case where she was held not to have the legal title, from the circumstance that a right or estate of her's in the property was liable to be defeated by contingent events. On the contrary, it was decided that for want of delivery the property had never become hers.

From a careful examination of authorities touching this subject, I am clearly of opinion that the first paragraph of section 329 of the code, page 230, is not an innovation, nor in contravention of any law of the United States, and that it is declaratory of the law as it had been previously established by decisions of the federal courts. *

The decision of the merits of this case must turn upon other questions, but a reference to the authorities cited on this point seemed to be due, both on account of the able and earnest manner in which this subject has been pressed upon the attention of the court, and that it may be understood that this point in the plaintiff's case is not an element in the reasoning that leads to the conclusions at which I have arrived in regard to the merits of the case.

The following are some of the other points made by the plaintiff:

1. That the record shown by exhibit marked " S " does not show jurisdiction in the court to grant the divorce.

---

* This subject is referred to in *Doll* v. *Meador*. 16 Cal. 295; *Van Valkenburg* v. *McCloud*, 21 Cal. 330; *Megerle* v. *Ash*, 28 Cal. —; and *Owen* v. *Jackson*, 9 Cal. 322. And it seems to be considered well settled, that the circumstance that the grantee takes a defeasible estate does not prevent the title from passing to him. Nor does the fact that there are conditions subsequent to be performed.

The cases of *Summers* v. *Dickinson*, 9 Cal. 554; and *Kernan* v. *Griffith*, 24 Cal. 87, treat of the act of Congress of Sept. 28, 1850, which grants swamp lands, and explicitly declares that " the whole of those swamp and overflowed lands, etc., are hereby granted to said state." These cases decide that the title passed immediately upon the passage of the act. Provision was made in the act for the survey of those lands, and for the issuance of a patent to the state at a future time.

In the United States supreme court, many of the cases, in which patents have been set aside in favor of a prior purchaser or donee, have proceeded on this principle, and a patent has in some cases been held absolutely void, on the ground that the title had previously passed from the United States by act of Congress.

See on this subject, *Fremont* v. *United States*, 17 How. 566; *Rutherford* v. *Green's Heirs*, 2 Wheat. 198, 505; *Strother* v. *Lucas*; 12 Pet. 454; *Green* v. *Liter*, 8 Cranch, 244; *Patterson* v. *Winn*, 11 Wheat. 380; *Polk* v. *Windal*, 9 Cranch 87, and 5 Wheat. 301; and *Blunt* v. *Smith*, 7 Wheat. 249, 273.

See also *Stoddard* v. *Chambers*, 2 Wend. 313; *Jackson* v. *McCall*, 3 Conn. 79.

2. That, in that suit, the complaint does not state facts sufficient to authorize a divorce.

3. It does not state facts that authorized a decree as to the property.

4. It was not in the power of the court in any case to transfer the lands of the wife to the children in fee.

5. The guardian's sale was not regularly made.

I think the first and second points, so far as they relate to granting the divorce, cannot be raised by the plaintiff in the face of the stipulation that the parties were divorced by the decree. The plaintiff claims that her rights in this respect are reserved by the saving clause in the stipulation, and her counsel claims that such was the agreement of the parties, expressed at the time the stipulation was signed. The court cannot look beyond the written stipulation to ascertain the intention of the parties, and I do not think the saving clause sufficient to enable the plaintiff to say at this late day, that the record does not disclose a decree of divorce. The admission debars the plaintiff from denying that there was enough before the court in the first instance, in 1857, to authorize the rendition of the decree, or afterwards in 1859 to justify entering it *nunc pro tunc.* It is true as a general proposition that consent cannot confer jurisdiction; but this is not a case of conferring jurisdiction, it is, in effect, an admission that the court had jurisdiction, and there is not, in my opinion, enough in the record to show affirmatively that the court had not jurisdiction to enter a decree granting a divorce.

I shall therefore take it as conceded that the court had jurisdiction of the persons and of the subject matter of the bonds of matrimony, for the purpose of entering a decree of divorce, and shall proceed to inquire as to the validity of that part of the decree which purports to vest the title of the wife's land in the children. The statute then in force (Comp. L. 1855, p. 540) provides, that "the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through

whom the property was acquired, and to the burdens imposed on it, for the benefit of the children. And all the property * * * *not otherwise* disposed of or regulated by order of the court shall, by such divorce be divested out of the guilty party, and vested in the party at whose instance the divorce was granted."

There is a conflict of authorities upon the question whether a court had power under that statute, in any case, to transfer the property of the parties in fee to the children.

In the case of *Fitch* v. *Durand*, tried before Judge Deady in the United States circuit court for the district of Oregon, it was held that a decree of similar purport to the one under consideration, did not operate to pass the fee, but only enabled the children to hold the property during their minority. The decision is placed upon the ground that the circuit courts of the Territory had not jurisdiction and power to make such disposition of the real estate of a party. It was there conceded that, "if the act has received a settled construction in the courts of Oregon, it is the duty of this (the U. S. circuit) court to follow such construction."

The decree then under consideration was rendered in the case of *Cline* v. *Cline*, in the circuit court for Multnomah county, in 1862. On the argument in *Fitch* v. *Durand*, counsel cited five other cases in which, between September 1855 and November 1860, the circuit courts in the same district had rendered decrees purporting to transfer real estate in fee to the children of the parties. No such case was cited from any other district, and the circumstance that the act had been so construed in only one district, was referred to as one reason for considering its construction still an open question.

The case now under consideration, was tried in another district, but the attention of the court was not called to it. It was said in the case of *Fitch* v. *Durand*, the act "contained no provisions for an appeal from the inferior courts in which the original jurisdiction was vested, to the supreme court, and therefore its provisions never came before the latter court, and were never considered or expounded by it." * * * "In the other judicial districts,

no such construction appears ever to have been given to the act, and only in these comparatively few instances in a period of nine years, in that one. If this state of things is any evidence of a settled construction of the statute, by the courts of Oregon, it is against the one claimed by the defendant. I conclude, then, that the question is unsettled, and that this court must construe the act for itself." And it was there held that, "the decision of the circuit court given in the suit for divorce, so far as it provides that the premises in controversy should be held by, or for the use of the minor children * * * beyond the time when they should become of age respectively, is simply void."

As no such provision of statute has been in force since 1863, and as it is quite possible this is the last time its construction will be questioned in the courts of this state, I am disposed to rest the decision of the case solely upon what appears to me a much less debatable ground.

It will be observed that the complaint in the suit for divorce makes no allusion to the property or to the pecuniary affairs of the parties, or of either of them.

The recitals in the decretal order, purporting to justify the entry of the decree *nunc pro tunc*, do not show that anything was determined concerning the property in the first instance, by the court that heard the cause. And there is enough appearing on the face of the record to show that the judge who made the order *nunc pro tunc*, was not the judge before whom the cause was tried. The clerk has certified that exhibit "S" is a copy of the whole of the record; we consequently have before us the judgment roll in the suit for divorce.

It is necessary, in order to sustain the defendant's positions, to assume that the circuit court could render a valid and binding decree in regard to a subject matter that is not mentioned in the pleadings; and that a judge could at a subsequent term, by an order *nunc pro tunc*, enter a decree making a transfer, from the wife to the children, of a particular parcel of land that was not previously described or mentioned in the pleadings or in the record.

Every reasonable intendment will be invoked in support

of the judgment or decree of a court of general jurisdiction. And courts often exercise powers that are incidental to the principal subject of the litigation. But such incidental power is not applied to a subject matter that is wholly extraneous and not mentioned in the pleadings. It always operates upon some matter that is regularly brought before the Court.

For example, in suits to remove clouds from title, or in bills of peace, where the principal point in the litigation is to establish and perpetuate a right, the court will sometimes afford incidental relief by reforming or canceling a written instrument, or by compelling its production and delivery, even when such relief is not the principal object of the suit; but the facts in relation to such instrument must be laid before the court by the pleadings. If the instrument was merely produced in evidence, and not mentioned in the pleadings, its reformation or cancelation would not be decreed. So in forcible entry and detainer, the court will afford incidental relief by granting restitution of the premises, but the premises are designated in the pleadings. So in the foreclosure of a lien, a writ of assistance is sometimes issued in favor of the purchaser, but this would not be done if the record contained no designation of the premises.

I am unable to call to mind any class of cases where courts have, by virtue of such incidental power, exercised judicial discretion to make a special and final disposition of a parcel of real estate that is not referred to in the pleadings or prior proceedings.

Under the statute above cited the decree in a suit for divorce may possibly, in certain cases, by operation of law, affect the title to property that is "not disposed of or regulated by order of the court," even where the property is not mentioned in the pleadings. But that circumstance does not add to the incidental power of the court, and it is not material to the inquiry here whether property not mentioned in the pleadings would be thus affected, for it is not claimed that this property has been transferred by mere operation of law. The question is whether it has been disposed of by the special adjudication set forth in the decree.

The object in requiring facts to be stated in the pleadings is threefold: that the facts may be brought before the court, whose office it is to apply the law to the facts; to apprize the opposite party what is intended to be proved; and to lay a foundation for recording that which shall be adjudged concerning the facts alleged. Neither party has the right to introduce any proofs except such as support or contradict something that is alleged in the pleadings. How, then, can the court exercise a discretion, having regard to the property of the parties, "the condition in which they will be left by such divorce, and to the party through whom the property was acquired," if the pleadings contain no reference to the subject. There are but two possible modes for such a proceeding when there are no allegations in regard to property, the judge must exercise the discretion mentioned in the statute without any knowledge of the facts, or he must act upon knowledge obtained outside of any legitimate proceeding connected with the trial of the cause.

I cannot doubt that, under that statute, it was contemplated that the court would act upon proofs, or upon facts taken as confessed, in attempting to make special disposition of real estate; and that special disposition of the property of the parties, although incidental to the granting or refusing the divorce, is within the provisions of the code requiring the complaint to state facts.

It is true that after the decree has become final, any colorable statement of the essential facts would be sufficient to prevent the decree from being held void: but the instances in which the effect of omissions, or defective statements of facts, are avoided by presumptions in favor of the jurisdiction, are where the pleadings have contained statements sufficiently general to comprehend the requisite facts by fair intendment.

If the issue joined be such as necessarily required, on the trial, proofs of facts imperfectly stated or omitted, without which proof the decision of the cause would not have been made, the imperfection or the omission will not be fatal. But this is the case only when a necessary intendment must arise, not merely from the decision, but from

the united effect of the decision and the issue upon which the decision was given, that the imperfectly stated or the omitted facts must have been proven on the trial. If there is nothing in the facts stated in the pleadings that would render such proofs necessary, no such intendment in favor of the decision will arise to aid or supply the defect. (*Garner* v. *Marshall*, 9 Cal. 268; *Hentsch* v. *Porter*, 10 Cal. 555.)

No such intendment arises to excuse such an omission in case of a judgment by default, for the default admits only such facts as are actually alleged, and there is no necessity for the plaintiff proving anything further. (1 Chitty, Pl. 673.)

By the common law, as well as by the code, the defect that the complaint fails to state facts constituting a cause of action, was not waived by failing to demur, or to answer; and this is upon the principle that courts will not, and can not, adjudicate upon that which is not brought before them.

In this case it is virtually admitted by the stipulation that the court had jurisdiction of the subject matter of the alleged divorce, and of the persons of the plaintiff and defendant. The question is whether there is any reasonable intendment or presumption that can be indulged, that the subject matter of the defendant's property was legally placed before the court for adjudication.

It is a case where the defendant might have appeared and filed an answer, describing her property. But if she had answered, the recital that she had been served by process by publication would have been unnecessary, and that recital, omitting all mention of an answer, certainly does not indicate that an answer was filed. This matter, however, is placed beyond conjecture; the clerk certifies that exhibit "S" is a copy of the whole record, and it is shown by inspection that the complaint is the only pleading. It is not a case calling for presumptions as to what pleadings were filed, for all the facts in relation to these matters are fully disclosed. The facts present this question: Could a judge who was trying a divorce suit, without having before him, judicially, any allegations or any knowledge as to whether either party owned any property, make a valid

decree specially transferring a specific parcel of land in a direction it would not pass by operation of law?

Aside from the general principle upon which the law universally requires pleadings upon which to predicate a judgment or decree, such could not have been the legislative intent in enacting this statute, because the statute requires the court to investigate and be informed in regard to the pecuniary condition of the parties, and as to the party through whom the property was acquired, before attempting to make an equitable disposition of the property; and it makes special provision concerning such property as shall not be disposed of or regulated by order of the court.

In the divorce suit there was no foundation laid for introducing evidence on these points, and there are no admissions, direct or by implication, concerning them.

I think there is not enough in the judgment roll in the divorce suit to operate as a foundation of a title to real estate, and that judgment should be rendered in favor of the plaintiff.*

---

CIRCUIT COURT FOR MULTNOMAH COUNTY, FEBRUARY TERM, 1872.

---

* This action was commenced in Marion County, and the venue changed to Multnomah County, Judge Bonham having formerly been counsel in the case.