HALL (PITTS v.). See Cases Nos. 11,192 and 11,193.

HALL (ROBINSON v.). See Case No. 11,952.

HALL (ROSSITER v.). See Case No. 12,082.

---

## Case No. 5,943.

### HALL v. RUSSELL et al.

[3 Sawy. 506.][1]

Circuit Court, D. Oregon. Nov. 12, 1875.[2]

ESTATE OF SETTLER UNDER DONATION ACT — ESTATE OF WIDOW AND HEIRS — STATUTE OF LIMITATIONS — APPLICATION OF STATUTE TO A SUIT IN EQUITY.

1. A settler under the donation act of Oregon before the completion of the residence and cultivation required by the act, had neither a descendible nor devisable estate in the donation; and upon his death prior to such completion, his interest in the premises ceased, and the same was granted by section 8 of said act to the heirs and widow, where one was left, of such settler, who took the land not as the heirs of the settler, but as the donees of the United States.

[Cited in Stubblefield v. Menzies, 11 Fed. 270.]

[Cited in Burch v. M'Daniel (Wash. T.) 3 Pac. 588.]

[See note at end of case.]

2. In April, 1852, L., who had been a resident of Oregon prior to December 1, 1850, became a settler under the donation act upon the public lands, and made the necessary notification and proof of the commencement of his residence, and died in January, 1853: Held, that upon the death of L. the premises passed, by virtue of section 8 of the donation act, to the heirs of L. as the donees of the United States, and that his devisees took no interest in the property.

[See note at end of case.]

3. In cases of concurrent jurisdiction, equity follows the law as to the statute of limitations; but in cases of purely equitable rights and titles equity is not bound by the statute, and only acts in analogy to it.

[Cited in Town v. De Haven, Case No. 14,113; Manning v. Hayden, Id. 9,043; Stevens v. Sharp, Id. 13,410; Etting v. Marx, 4 Fed. 678; Trauer v. Tribou, 15 Fed. 28; Hickox v. Elliott, 22 Fed. 18; Allen v. O'Donald, 28 Fed. 24; Gest v. Packwood, 39 Fed. 535; U. S. v. Wallamet V. & C. M. Wagon Road Co., 42 Fed. 358; Id., 44 Fed. 241.]

4. The limitations of the several states in regard to actions at law are made applicable to like actions in the national courts by section 721 of the Revised Statutes, but this does not include special limitations concerning suits in equity, and therefore section 378 of the Oregon Civil Code prescribing a limitation of five years as to a suit in equity to affect a patent to land is not binding upon this court.

5. In May, 1866, a patent was issued to W. H. and J. Delay for the premises settled upon by L. in April, 1852, as the heirs of Joshua Delay, in pursuance of an alleged settlement upon the land by said J. D. subsequent to the death of L., in January, 1853; and in October, 1875, the devisees of said L. brought suit to charge the defendants, the assignees of said patentees, as trustees of the plaintiff, and to compel them to convey the premises to them as the successors in interest to L., the true and first settler; and it not appearing that the plaintiffs had ever been misled or deceived by the defendants or induced to forbear the assertion of their alleged rights, or that any relation of trust or confidence ever in fact existed between the parties, but it appearing that they claim under titles adverse in their origin: Held, that the limitation provided by section 378 of the Oregon Civil Code to suits in equity in the state court affecting a patent, ought to be applied to the suit in this court.

[This was a suit in equity by Lydia C. Hall and others against Edwin Russell and wife, W. W. Page and wife, and George H. Williams to have the defendants decreed trustees for the plaintiffs of a donation of land in Oregon.]

W. W. Chapman and James G. Chapman, for complainants.

W. W. Page and G. W. Yokum, for defendants.

Before SAWYER, Circuit Judge, and DEADY, District Judge.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[2] [Affirmed in 101 U. S. 503.]

BY THE COURT (DEADY, District Judge). The plaintiffs, the widow and children of Samuel Parker Hall, deceased, and W. W. Chapman, the administrator, with the will annexed, of the estate of J. L. Loring, deceased, bring this suit to have the defendants, Edwin Russell and wife, W. W. Page and wife, and George H. Williams, declared the trustees of the plaintiffs in regard to a donation situated in Multnomah county, being parts of sections 26 and 27 of T. 1, R. 1 E., in Wallamet district, and containing 289.47 acres.

Among other things the bill states, that at Cincinnati, on August 20, 1849, said Loring made his last will, by which he devised all the property, except certain legacies, of which he might die seised or possessed to said Samuel Parker Hall; that before December 1, 1850, Loring became a resident of Oregon, and in April, 1852, became a settler under the donation act of September 27, 1850, upon the tract of land aforesaid, and during the same month notified the surveyor-general thereof, and made the necessary proof of the commencement of his residence and cultivation, and that the same was for his own use; that Loring continued to reside thereon until his death in January, 1853, having up to said time, complied with said donation act in all respects; that a few weeks before his death Loring took Joshua Delay and Sarah his wife to live upon the premises with him as a tenant or cropper, where they remained as such until the death of Loring, after which said Joshua claimed the premises as a settler, thereon under said donation act, and afterwards, said Joshua and Sarah having died in the meantime, on May 9, 1866, a patent was issued to W. H. and Joseph Delay for the premises, as the heirs at law of said Joshua and Sarah, that said patent was issued upon the fraudulent representations of said Delay and his heirs, and in fraud of the rights of the heirs of said Loring, to whom it should have issued—of all which the defendants, and those through whom they claim, had notice. That in October, 1871, the heirs at law of said Loring brought suit to recover the premises from the defendants in this suit upon the ground that said patent was wrongfully issued to said Delay heirs, as aforesaid; and thereupon, in October, 1872, said heirs in consideration of the sum of $5,000, conveyed all their interest in the premises to the defendants; that the true value of said premises is $100,000, and the rights of said Loring heirs therein are subordinate to those of his devisees, of which the defendants had notice.           •

That at the death of said Loring the existence of the will aforesaid was not known in Oregon, and said W. W. Chapman was duly appointed administrator of said Loring's estate, and as such made proof, under section 8 of the donation act, of the compliance of said Loring as a settler upon said premises with said act up to the time of his death before the proper land office, whereupon the register and receiver thereof, on October 27, 1864, issued a certificate for said donation to the heirs at law of said Loring, and disallowed the adverse claim of the Delay heirs thereto; that the commissioner of the general land office, affirmed this action of the local land office, but the same was set aside by the secretary of the interior, and the patent was issued to the Delay heirs as above stated; and that on July 20, 1871, said will was duly admitted to probate in the county court of Clackamas county, and said Chapman appointed administrator, with the will annexed, of the estate of said Loring.

The defendants demur to the bill, and assign several causes of demurrer. But two of them will be considered: 1. The plaintiffs have no interest in the subject-matter of the suit, and cannot maintain any suit concerning it; and, 2. The statute of limitations.

The demurrer admits that at the time of his death, Loring was a settler upon the premises under the donation act for a less period than four years, but that up to the time of such death he had complied with all the provisions of the act, and that the patent which issued to the Delay heirs was procured by the fraudulent representations of Delay and his sons. If, then, the plaintiffs are the successors in interest of Loring, they are entitled to the relief sought, unless the lapse of time shall be considered a bar to it.

Under section 4 of the donation act, Loring was qualified to take 320 acres of the public land in Oregon. The donation was made by the act in words of present grant, subject to the performance of the conditions of four years' residence and cultivation and proof of the same. Until the performance of these conditions, the estate granted being a defeasible one, was liable to revert to the donor, except where the performance became impossible by the death of the settler, in which case the common law would have excused the failure to comply with the act, and thereupon the estate would have become absolute and descended to his heirs as a fee simple. 2 Bl. Comm. 156; 4 Kent. Comm. 127; Delay v. Chapman, 3 Or. 462.

Now this contingency was not left by the donation act to the operation of the general law, but was provided for in section 8 of the act as follows: "Upon the death of any settler before the expiration of the four years' continued possession required by this act, all the rights of the deceased under this act, shall descend to the heirs at law of such settler, including the widow, where one is left, in equal parts; and proof of compliance with the conditions of this act up to the time of the death of such settler, shall be sufficient to entitle them to the patent."

In view of this provision of the act, had

Loring a devisable estate in the premises? We think not. His interest therein terminated with his death, and thereafter he had nothing to dispose of. Upon his death, without leaving a widow, and before the completion of his residence and cultivation, this section of the act limited the property over to his heirs—said it should descend to them—in effect gave it to them in consideration of the service and death of their ancestor. They are not in as the successors in interest of Loring, but take the land as the donees of the United States. The patent issues to them by name or by some descriptive phrase—as, "the heirs of Loring," under which they are collectively included. The test cited by Jarm. Wills, 88, applies. An estate not descendible is not devisable. Nor could Loring have disposed of this property by sale in his lifetime. The third proviso to section 4, which was in force during his residence on the land, declared void all future contracts made by a settler prior to the receipt of his patent, for the sale of his donation. And independent even of this prohibition any contract for or sale of the land before the completion of his residence and cultivation, would have been of no further force or effect upon the happening of the contingency provided for in said section 8.

Nor is there anything in the general policy or purpose of the act tending to show that it was the intention of congress to permit a settler to devise his donation before it had become unconditionally his, by the completion of his residence and cultivation. The act (section 4) authorizes or recognizes the right of two classes of persons to dispose of their donations by will: 1. Married persons, who are settlers under said section and have complied with the provisions of the act and die before patent issues; and, 2. Alien settlers who die before their naturalization is completed. As to the first of these classes, the act merely recognizes the right of the donee to make a testamentary disposition of the property according to the laws of Oregon in cases where the act has been complied with. It does not confer it, but assumes that it exists by the local law. The donation having become indefeasibly vested in the donees, it follows that they could have disposed of it by will, if authorized by the law of Oregon, although the act had been silent upon the subject. In short, as to such married persons, the act appears to recognize their right to dispose of their donations by will according to the local law, and only provides for its disposition in cases where they die intestate and before the patent issues.

As to the second class, it is admitted that the language of the act is general enough to include the case of an alien settler dying before the completion of his residence and cultivation. But provision being expressly made by section 8 that "upon the death of any settler before the expiration of the four years' continued possession required by this act,"

that the donation shall go to his heirs, the general language of this clause in regard to alien settlers ought to be construed, if it reasonably can, so as not to interfere with the specific provision of this section.

This clause in regard to aliens occurs in that part of section 4 which provides for the disposition of a donation where the donee dies after the completion of the residence and cultivation, and before the issue of a patent; and is a proviso to such part. The manifest purpose of the proviso is to provide for the contingency of the death of an alien settler after he had declared his intentions and before he had completed his naturalization. This might happen in a case where the four years' possession had expired. Upon declaring his intention to become a citizen an alien might become a settler; might reside upon and cultivate his donation for four years and make proof of the same and die without completing his naturalization. The failure to complete his naturalization might be the result of neglect on his part or want of time or opportunity. For instance, an alien, who was an occupant of a tract of the public land for four years prior to the passage of the donation act, might under section 4 at once declare his intentions and make his notification and proofs, but could not complete his naturalization for two years thereafter, in which time he might die. Under these circumstances a patent could not issue for the donation to any one, for the settler not having completed his naturalization had not complied with the act making the grant, and it would revert to the United States.

But having performed the essential service of residence and cultivation upon the land, in consideration of which the donation was made, congress might well excuse his failure to complete his naturalization, which by his very death would become immaterial and of no consequence to any one, and to permit him to devise his donation, or in default of that provide that it should go to his heirs. But if such alien died "before the expiration of the four years' possession required by the act," with or without having completed his naturalization, then the case falls within section 8, and the property is not permitted to pass to his devisees, but is given directly to his heirs and widow. This construction of this proviso makes the various provisions of the act concerning the disposition of the donation upon the death of the settler before the issuing of the patent harmonize. It goes upon the reasonable and just theory that a settler having completed his four years' residence and cultivation—the material consideration for the grant—he had thereby acquired the jus disponendi of his donation, and might devise it in accordance with the local law as he saw proper; but that when a settler has not performed the conditions of residence and cultivation, such right of disposal did not attach to him, and therefore congress might justly dispose of

the donation at his death. It also places all settlers upon the same footing, and avoids the absurdity of supposing that congress intended to provide that an alien who had not completed his occupation of the land might, nevertheless, dispose of it by will, while a citizen should not.

But counsel for plaintiffs insists that the grant to Loring, taking sections 4 and 8 together, and considering that he died before he had occupied the land four years, leaving no widow, amounts in effect to this, and ought to be so construed: The premises are hereby granted to Loring for life, with the remainder to his heirs at law; and that such a grant is within the rule in Shelly's Case, which was then and now in force in this state, and therefore the whole estate or unconditional fee of the premises vested in the first taker, Loring, from the date of his settlement, and he might dispose of it by will in disregard of the remainder to his heirs. This argument assumes that by virtue of section 8, the heirs at law of a settler dying intestate, before the completion of his residence and cultivation, take or inherit from him as heirs. But this is clearly not so. The language of the section is open to criticism, but the manifest intention of congress was to grant the premises occupied by the deceased settler to his heirs. It declares that the rights of the settler under the act shall descend to his heirs.

What were the rights of such settler at the time of his death is not apparent. To all intents and purposes his interest on the premises terminated with his decease. But in any event, the word "descend" as here used evidently means nothing more than pass or go. Stephenson v. Hagan, 15 B. Mon. 315. The heirs could not take in conjunction with the widow and take as heirs, because they would then take less than an heir. Fields v. Squires [Case No. 4,776].

Neither was this a grant to Loring for life with remainder to heirs in fee. But it was a grant to Loring in fee but upon conditions, and also a contingent or alternate grant of the same premises to his heirs in case he should fail, by reason of his death, to perform the conditions. The settler and heirs in case of his death are thus brought in juxtaposition with regard to the premises, but there is no transmission of the property in the same from the one to the other, as from an ancestor to an heir. The term "heirs" is used merely as a designatio personarum, who are to receive the gift. Congress could as well have given it to John Doe and Richard Roe as to the heirs. But in consideration of the partial performance of the ancestor, congress gave the donation anew to his heirs and widow. They then take the property as the direct donees of the United States, and are in by purchase and not descent. But they must claim the donation, and make proof of the compliance of the ancestor with the act up to the time of his death, and their relation to him. Delay v. Chapman, 3 Or. 464. The interest of the settler terminated with his death and the act—which is a law and not a mere conveyance, and therefore is to take effect according to its intention, whether in accord with the rule in Shelly's Case or not—granted the property directly to the heirs, and provided that a patent should issue to them upon making proof of the facts. Loring settled upon the donation, understanding that if he died before the completion of his residence thereon, that the act provided to whom it should go, and that, therefore, he had no power to dispose of it otherwise by will. Loring not having a devisable estate in the premises at the time of his death, his interest having terminated with his death, neither his devisees nor his administrator have any interest in the property, and cannot therefore maintain this suit. Upon this point the demurrer is well taken.

We also think that the suit ought not to be maintained on account of the lapse of time. By section 378 of the Oregon Civil Code, it is provided that no suit in equity "shall be maintained to set aside, cancel or annul, or otherwise effect a patent to lands issued by the United States. * * * or to compel any person claiming or holding under any such patent to convey the lands described therein, or any portion of them, to the plaintiff in such suit, or to hold the same in trust to, or for, the use and benefit of such plaintiff for or on account of any matter, thing or transaction which was had, done, suffered or transpired prior to the date of such patent, unless such suit is commenced within five years from the date of such patent, or within one year from the passage of this act." It has been held that the defense of the statute of limitations could not be made by demurrer, but must be interposed by plea or answer, so as to give the plaintiff an opportunity to reply the facts and circumstances which, in equity, exclude the statute. 3 Atk. 225. But the rule appears now to be well settled, and with reason, that whenever a bill is so framed as to present the objection of the lapse of time, a demurrer for that cause will lie. Story, Eq. Pl. §§ 503, 760.

In cases of concurrent jurisdiction, such as matters of account, etc., where the party may proceed either at law or in equity, the statute of limitations applies with equal force in both courts. In such cases courts of equity consider themselves within the spirit of the statute and act in obedience to it, but in the consideration of purely equitable rights and titles, they act in analogy to the statute, but are not bound by it. Robinson v. Hook [Case No. 11,956]; Pratt v. Northam [Id. 11,376]; Sherwood v. Sutton [Id. 12,782]; 2 Story, Eq. Jur. § 1520. For instance: When an action upon a legal title to land would be barred by the statute, courts of equity will apply a like limitation to suits founded upon equitable rights to the same

property. So, in cases of implied or constructive trust, where it is sought for the purpose of maintaining the remedy, to force upon the defendant the character of trustee, courts will apply the same limitation as provided for actions at law. Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 176; Miller v. McIntyre, 6 Pet. [31 U. S.] 66; Beaubien v. Beaubien, 23 How. [64 U. S.] 207. The case before the court is one of this class. The right of the plaintiffs, admitting that the devisees under the will took the donation in preference to the donees under section 8 of the donation act, depends upon the establishment of an implied trust, to be raised by the law out of the circumstances of the case, and notwithstanding the adverse origin of the defendants' title and the like possession thereunder.

But when it is said that a court of equity will follow, the statute of limitations, it is understood that it is a statute of the same forum or jurisdiction, and not that of another state or country. The statutes of limitations of the several states are made the rules of decision in the United States courts, in trials at common law. Rev. St. § 721; Shelby v. Guy, 11 Wheat. [24 U. S.] 361; McCleeney v. Silliman, 3 Pet. [28 U. S.] 276. Now, thereby, these statutes become practically laws of the United States, and the national courts sitting in equity follow them as laws of their own forum or jurisdiction. But the limitation here invoked as a bar to this suit is no part of the laws of the United States. By its terms, it only applies to suits in equity in the courts of the state. Therefore it does not come within the purview of section 721, supra, nor become in any sense the law of this forum. It is a singular case. Our attention has not been called to another like it or to any authority directly bearing upon it.

An action at law to recover possession of this property would not be barred by the laws of this state under twenty years. Whether the court shall follow that statute or the limitations of five years contained in section 378, supra, is the question. It is conceded that, in a case of equitable cognizance like this, the court is not bound by the statute of limitations, but may, for good reason, apply a longer or a shorter time in bar of a suit. There is nothing in the circumstances of this case or the period fixed by the statute which requires the court to lengthen the term, but rather the contrary. The patent was issued nearly ten years ago. The limitation of five years upon a suit of this kind in the state court was enacted on October 22, 1870, and took effect January 24, 1871, nearly five years before the commencement of this suit, October 2, 1875. No reason is given for the delay, nor does it appear that the plaintiffs have been deceived or misled in any way by the defendants, or in any wise induced to forbear the assertion of their alleged rights. There never was any

actual relation of trust or confidence between these parties. They claim under titles adverse in their origin, and have always occupied the attitude of adverse claimants. Under these circumstances we think that the court ought to apply the shorter limitation of the two. Statutes of limitation are measures of public policy and expediency, and it is desirable that the rule should be the same in the national and state courts. We think in this case the court may safely adopt the limitation prescribed by the laws of the state in its courts in like cases. Admitting then, that the devise to the plaintiffs was sufficient to invest them with the title to the premises, they must be denied the relief sought on account of the lapse of time.

A decree will be entered dismissing the bill for want of equity, and because of the delay in bringing the suit.

[NOTE. An appeal was then taken to the supreme court by the plaintiffs, and the decree affirmed in an opinion by Mr. Chief Justice Waite, who said that Loring, having died before the conditions requisite for vesting the title in him had been fulfilled, had no devisable interest in the land. 101 U. S. 503.]