S. D. NORTHCUT, S. T. NORTHCUT, AND WM. W. NORTHCUT, APPELLANTS, *v.* LOUIS LEMERY, RESPONDENT.

SUMMONS—SERVICE BY PUBLICATION—RECITALS IN DECREE.—Where the statute in divorce cases required a summons on a non-resident defendant to be published four weeks, as in the act of January 17, 1854, and a decree granting a divorce under it contained a recital in the following words, "And it further appearing that the defendant had been served by publication as required by law," jurisdiction over the person of the defendant will not be presumed, it appearing by the filing on the complaint that four weeks could not intervene between the time of such filing and the rendition of the decree.

RECORD MUST SHOW STRICT COMPLIANCE—SPECIAL POWER.—Where a court of general jurisdiction exercises a special power conferred upon it by statute, and not according to the course of the common law, it must strictly comply with the requirements of the statute in its proceedings, and this compliance must affirmatively appear from the record itself.

APPEAL from Marion County.

On the twenty-third day of June, 1851, Hubert Petit and Emerance Petit, his wife, commenced to reside upon and cultivate a certain tract of land containing one hundred and ninety-five acres, and continued to reside thereon and cultivate the same for four years, as required by the donation land law of Oregon. The north half of the claim was set apart to the said Emerance, and the south half to the said Hubert Petit, and a patent was afterwards issued to them. On the second day of September, 1857, Hubert Petit filed a petition for a divorce from his wife, and at the September term, 1857, of the district court of the first judicial district of Oregon territory, a divorce was granted by that court, although the decree dissolving the marriage was not then entered of record. Afterwards, at the September term, 1859, the decree was entered on the journal of the court, *nunc pro tunc,* as follows:

"HUBERT PETIT *v.* EMERANCE PETIT—Divorce.

" Now on this day, it appearing that a decree had heretofore been rendered in this cause, at the September term thereof, 1857, and that said decree had not been entered, and it further appearing that defendant had been served by publication, as required by law; it is ordered that said decree be entered *nunc pro tunc;* and it is therefore ordered that the bonds of matrimony heretofore existing between the parties be dissolved, and that Hubert Petit have the exclusive custody of the two children, the issue of said marriage, named Delia and Josephine, and that the north half of the land claim of said parties, being the part of said claim set apart to the said defendant by the surveyor-general, be decreed to, and the right and title thereof be vested in the said children, and plaintiff pay costs."

On the trial, the appellants read in evidence the record in the foregoing divorce suit. They then read in evidence a certified copy of the proceedings in the probate court authorizing and directing a sale of the north half of said donation land claim by the guardian of the said children, Delia and Josephine, and the sale of the same by said guardian to

S. T. Northcut, one of the appellants. They then read in evidence a quitclaim deed dated the fourteenth day of October, 1875, whereby Hubert Petit conveyed all his right, title, and interest in the said donation land claim to the appellants, S. D. Northcut, S. T. Northcut, and W. W. Northcut. No other evidence of title was offered in evidence by the appellants.

The respondent then offered in evidence a transcript of the judgment roll in an action commenced in the circuit court for Marion county on the twenty-seventh day of July, 1871, by *Emerance Groslouis* v. *S. T. Northcut*, one of the appellants, for the recovery of the land described in the complaint, wherein the said Emerance was adjudged to be the owner of the land in controversy. They also offered parol evidence to prove that Emerance Groslouis was formerly the wife of Hubert Petit, from whom he obtained a divorce, and that by a deed from her the title became vested in the respondent.

*Knight and Lord*, for appellants.

*B. F. Bonham, W. W. Thayer, and G. W. Lawson*, for respondent.

By the Court, KELLY, C. J.:

This is an action of ejectment brought to recover a tract of land known as the north half of the donation claim of Hubert Petit and Emerance Petit, his wife, being that portion of it set apart by the surveyor-general of Oregon, to the said Emerance, to whom a patent was issued by the United States. S. T. Northcut, one of the appellants, formerly claimed the land, deriving his title under a decree of divorce made at the September term, 1857, of the district court of Oregon territory for Marion county, wherein the court decreed that the north half of the said land claim, which belonged to Emerance Petit, should be vested in Delia and Josephine, the minor children of the parties in the divorce suit; and a subsequent sale of the same land to him by the guardian of said minor children. Under the guardian's sale he obtained possession of the land.

In 1871 an action of ejectment was commenced in the circuit court for Marion county, by Emerance Groslouis (formerly Emerance Petit), against S. T. Northcut, to recover this land, and it was adjudged by the court that she was the owner of it. (*Groslouis* v. *Northcut*, 3 Or. 394.) The court held in that case, that inasmuch as the pleadings in the divorce made no reference to the property of Emerance Petit, the territorial district court could not, by its decree, transfer the title to the land from her to her children, under the eighth section of the act of January 17, 1854, relating to divorce and alimony. (Or. Stat. 540.) This judgment was afterwards affirmed by the supreme court at the January term, 1873. On the fourteenth of October, 1875, the appellants obtained a quitclaim deed from Hubert Petit, conveying to them his right, title, and interest in the said donation land claim.

The position now taken by the appellants is, that inasmuch as the court decided in the case of *Groslouis* v. *Northcut* that the decree of divorce in *Petit* v. *Petit* did not dispose of the property of Emerance Petit, the legal effect of the decree was to vest the title to the same in her husband, because the wife was the guilty party in the divorce suit. In support of this position appellant's counsel refer to a clause in the eighth section of the act of January 17, 1854, as follows: "And all property and pecuniary rights and interest, and all rights touching the children, their custody and guardianship, not otherwise disposed of or regulated by the order of the court, shall, by such divorce, be divested out of the guilty party and vested in the party at whose instance the divorce was granted." They contend that by operation of the statute just quoted, Hubert Petit became the owner of his divorced wife's property, including the land in controversy, and that by his deed to them they now have the legal title to it.

The case was tried in the court below without the intervention of a jury, and wholly upon record testimony, which is now before us. And without going into an examination, or giving an opinion upon the many intricate and important questions presented in the argument of counsel on both

sides, it is sufficient for us to say that the appellants must recover in this action, if at all, upon the strength of their own title. And this title, by the very records adduced to support it, is shown, we think, to be fatally defective. As one of the muniments of their title they produce in evidence and rely upon the decree of divorce granted by the district court at the September term in 1857, in the case of *Hubert Petit* v. *Emerance Petit.* The decree was made at that term of the court, but through some inadvertence it was not then entered of record, and not until the September term, 1859, two years afterwards, when it was entered *nunc pro tunc* as of September term, 1857.

A certified copy of the entire record shows that the petition for a divorce sworn to on the second day of September, 1857, and filed on that day, and the decree entered *nunc pro tunc* are all and the only records in the case. There, is no evidence of the service of a summons upon the defendant, Emerance Petit, other than the recital in the decree itself, which is as follows: "And it further appearing that defendant had been served by publication as required by law." The law then in force governing the mode of service of a summons in cases of divorce was as follows:

" Sec. 6. If the defendant is not a resident of the territory, or can not for any cause be personally summoned, the court or judge in vacation may order notice of the pendency of the suit to be given, in such manner and during such time as shall appear most likely to convey a knowledge thereof to the defendant, without undue expense or delay; and if no such order be made, it shall be sufficient to publish such notice in a weekly newspaper printed in or nearest to the county in which the suit is pending, four weeks in succession, and if the defendant fail to appear and make defense, at the first term after such notice, or after ten days' personal service of summons, the evidence may be heard, and the cause decided at that term, or compulsory process may be had to obtain an appearance or answer, if it be necessary to the disposition of property or of children."

It will be perceived that there were two ways of serving notice of the pendency of a suit for divorce upon a non-

resident defendant, or one upon whom personal service could not be made. One was by an order of the court or judge, that the notice should be given in such manner as would most likely convey a knowledge of the pending suit to the defendant, and save the parties from any unnecessary expense of publication. The other mode of service, when no such order existed, was by publication in a weekly newspaper printed in or near the county in which the suit was pending, for four weeks in succession.

In the case of *Petit* v. *Petit,* the record recites the manner in which service was made, that is, " by publication as required by law," and there is, therefore, no presumption raised that it was made in pursuance of any order of the court or judge. Where the record discloses a particular mode adopted to acquire jurisdiction over the person of a defendant, if that is not sufficient to confer the jurisdiction, it will not be presumed that any other mode was adopted, or that jurisdiction was acquired in any other way, unless there is something further in the record on which to base such presumption. It may be conceded that where the record is silent as to the mode of acquiring jurisdiction, it will be presumed. But where the record shows the mode resorted to, there is nothing either in authority or reason that will warrant the presumption that another mode was resorted to. That would be presuming against the plain implication of the record. (*Ely* v. *Tallman,* 14 Wis. 30.)

There having been no other mode of service in the divorce case than the alleged publication, was that a sufficient compliance with the requirements of the law to give the court jurisdiction over the person of the defendant? The statute required four weeks' publication. The petition for a divorce was filed on the second day of September, 1857, and only four weeks of that month remained. Even if the first publication had been made on the day the petition was filed (and it could not have been before), the service would not have been complete before the first day of October. Section 6 of the act before quoted, provides that " if the defendant fail to appear and make defense at the first term

after such notice * * * the evidence may be heard and the cause decided at that term."

It is true the decree of the court recites " that the defendant had been served by publication as required by law," and it is well settled that a court of general jurisdiction proceeding within the scope of its powers will be presumed to have jurisdiction to give the judgments and decrees it renders until the contrary appears. And it is equally well settled in this state that where there is a recital in a judgment of due service of a summons upon a defendant, nothing short of a clear contradiction in the judgment roll will affect the recital. (*Ladd* v. *Higley*, 5 Or. 296.) But where a decree contains a recital that due service was made and the return of the sheriff purports to set out the mode of service, and the mode set out is insufficient, the recital will not aid the return. (*Heatherly* v. *Hadley*, 4 Or. 2.)

Although the decree which granted a divorce to Hubert Petit, recited a service by publication of the notice, yet it is manifestly an impossibility that it could have been published four weeks before the first day of October, when the first publication was on or after the second day of September. It therefore necessarily follows, that the decree of divorce granted at the September term was made when the court had no jurisdiction of the person of Emerance Petit, and no principle of law is more clearly settled than that a judgment or decree rendered by a court which has no jurisdiction of the subject-matter of the suit, or of the person of the defendant, is void, and that it will be so treated whenever it is drawn in question. (*Hunsaker* v. *Coffin*, 2 Or. 107.)

There is another reason why the decree made in the divorce suit can not be upheld. The court which rendered it, although one of general jurisdiction, was then exercising a special power conferred upon it by statute, and not according to the course of the common law. And in such cases, even a court of general jurisdiction must strictly comply with the requirements of the statute in its proceedings, and this compliance must affirmatively appear from the record itself; and

unless it does so appear, no presumption will be indulged to sustain the validity of its judgments or decrees. (*Heatherly* v. *Hadley*, 4 Or. 1; *Galpin* v. *Page*, 18 Wallace, 350; *Commonwealth* v. *Blood*, 97 Mass. 540; 1 Smith's Leading Cases, 1116.) In England the ecclesiastical courts only, had jurisdiction in cases of divorce. They were unknown to the courts of common law, and it is by statutory enactment only that our courts of general jurisdiction take cognizance of such cases. And the service of a notice to the defendant to appear and answer, made by publication instead of personal service, is also in derogation of the common law mode of service. It is to cases of this kind that the language of Mr. Justice Field, in the case of *Galpin* v. *Page*, applies: " Where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class of cases not within its ordinary jurisdiction, upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear upon the record."

The service of the notice upon the defendant, Emerance Petit, having been made by publication, the record should disclose affirmatively how and when and where it was published, so that an inspection of it would clearly show that every requirement of the statute had been strictly complied with. Failing to do this, the decree amounts to nothing, and it can not be invoked to sustain the appellants' cause of action, and as this decree was and is the foundation of their title, that necessarily fails also. It is needless, therefore, to pass upon the other points of error raised in the record, and the judgment of the court below will be affirmed.

Mr. Justice BOISE dissented.