J. J. Burch *vs.* Elisha McDaniel & Josiah Johnson.

Bare possession of any thing of value, susceptible of exclusive possession is property, and ordinarily the surrender of such possession would be a good consideration for a contract.

On the decease of an intestate pre-emptor, whose title to the land he occupied at the time of death is yet inchoate, a saleable possessory right passes to his administrator.

The administrator of a deceased pre-emptor takes his decedent's possessory right, subject to a trust requiring him to proceed to perfect title in favor of the heirs, if there be any, provided the estate is in a condition enabling him to do so, and the interests of the heirs, all things considered, so demand; and for the discharge of this duty he is liable as for the performance of any other duty.

Aside from this trust the administrator is free to dispose of the possession, for the best interest of the estate.

The Pre-emption statutes place but one restriction upon the administrator and that is a continuance of the restriction placed upon the pre-emptor from transferring any interest in the land.

Error to the First Judicial District for Yakima county.

*Allen Bros.* and *Edward Whitson* for plaintiff in error.

A possessory right to lands, or the possession of lands, is property, subject to sale. Rorer on Judicial Sales, Sec. 552;

*Jackscn* v. *Williams*, 10 Ohio, 70; *Hayes* v. *Baker*, 5 Ohio St. 254.

The sale of the possessory right and the improvements of a settler, is recognized as valid, by the courts.    Rorer on Judicial Sales, Sec. 537; *Fessler* v. *Haas*, 19 Kansas, 216; 18 id. 153; 6 id. 42; *Lester* v. *White*, 44 Illinois, 465; 5 California, 397; 8 id. 141; 9 id. 141; 6 id. 558; 8 Minnesota, 416; 17 id. 27; 15 Arkansas, 314; 23 id. 729, 210; 26 id. 192; *Bowman* v. *Torr*, 3 Iowa, 571.

This property descends to the administrator.    Laws W. T. 1875, p. 278, Sec. 129; *Groser* v. *Hanly*, 5 California, 486; *Bowers* v. *Keesecker*, 14 Iowa, 307.

The Judgment of the Probate Court, approving the sale made to defendant in error by the administrator, standing unreversed is conclusive.    Laws W. T. 1873, p. 253, Sec. 5; Freeman on Judgments, Secs. 122, 319; Bigelow on Estoppel, (2nd. ed.) 145, 147.

The maxim *caveat emptor* applies.    *The Monte Allegre*, 9 Wheaton, 616; Freeman on Executions, Secs. 301, 335, 352; Rorer on Judicial Sales, Secs. 452–8.

*Williams, Hill, Durham, Thompson & Mays*, for defendant in error.

A contract by an administrator to transfer a Pre-emption claim to one advancing money to make entry of same in landoffice is void.    *Cothran* v. *McCoy*, 33 Ala. 65.

That the provisions of the Pre-emption Law under consideration are analogous to certain provisions in the Donation Act and should therefore bear like construction.    *Delay* v. *Chapman*, 3 Oregon, 459; *Hall* v. *Russell*, 3 Sawyer, 506.

Before payment of purchase money, and obtaining a certificate, the pre-emptor has neither a legal nor equitable title. *Hatton* v. *Frisbie*, 37 California, 475: *Frisbie* v. *Whitney*, 9 Wallace, 187; *Yosemite Valley Case*, 15 Wallace, 77.

When the pre-emptor dies, his possessory rights die with him.    *Collins* v. *Bartlett*, 44 Cal. 383.

The Probate Court had no jurisdiction of the *subject matter*, and any action taken by it was void. Freeman on Void Judicial Sales, Secs. 3 and 4; Rorer on Judicial Sales, Sec. 474.

*Opinion by Greene, Chief Justice.*

Plaintiff in error, as administrator, sued defendants in error in the District Court for $1723, a balance averred to be due upon a promissory note which had been given by them to the intestate. Defendant McDaniel answered, setting up a counter claim of $2923. Plaintiff replied by alleging that he, as administrator, had sold to defendant for $1200, under direction of the Probate Court, the possessory right of intestate as pre-emption claimant in a certain tract of land and improvements, and that the sale was accompanied by an agreement between himself and McDaniel, afterwards approved and confirmed by the Probate Court, that the price should be credited against the sum of $2923, and reduce it to the amount demanded in the complaint.

On trial plaintiff offered to prove the facts pleaded in his reply. Defendant objected. The District Judge sustained the objection and excluded the evidence. As a result, plaintiff lost his case. He, therefore, comes now into this Court and seeks to reverse the judgment below on the ground of improper exclusion of evidence. Whether he is entitled to this relief or not seems to us to depend upon the resolution of one simple question. Does there, on the decease of an intestate pre-emptor, whose title to the land he occupies is yet inchoate, any saleable possessory right pass to his administrator?

As a foundation for this question we have a concession by both parties before us, that a pre-emption claimant has a possessory right in the land he claims, and that this possessory right is perfectly distinguishable from any title, complete or incomplete, which he may have or hope for to the land itself. It is further conceded that the former is saleable and the latter not. And this accords with decisions, State and National, too numerous to cite.

Bare possession of anything of value of which exclusive possession may possibly and lawfully be had, is property, and is valuable, and ordinarily the transfer or relinquishment of

such possession is good consideration for a contract. Unless an administrator, as administrator, is legally incapable of taking possession of a tract of land entered under the pre-emption laws by his intestate, or if in possession is obliged by law to transfer it to transferees which the law designates, we see no reason why he should not be regarded as having the power, under direction of the Probate Court, freely to dispose of any possession of such land, that may have fallen to him by virtue of his administration.

Defendants in error refer us to certain provisions of the Pre-emption Laws, which they maintain preclude the administrator from exercise of such a power. These provisions are contained in §§ 2263 and 2269 of the U. S. Revised Statutes. Section 2263 declares that any sale of the land by the claimant, before patent issues, shall be "null and void." Section 2269 directs, that in case of death of the claimant before perfecting title, it shall be competent for his administrator or one of his heirs to file the necessary papers to perfect the same, "but that entry in such cases shall be made in favor of the heirs of the deceased pre-emptor, and a patent thereon shall cause the title to enure to such heirs as if their names had been specially mentioned." Here an intent is evident on the part of Congress to prevent any right or interest in the land itself being transferred by the pre-emptor or his heirs to third parties until the title of the United States has been first divested. Also an intent to preserve to the family of the pre-emptor who survive him, or, more precisely, to his heirs, the benefit of the money, time, toil and sagacity he has expended in the selecti on, entry retention and improvement of the land. But we do not perceive, that the statute presumes an unalterable desire on the part of the pre-emptor or heirs to acquire title, or forbids the abandonment of their possession at any time, and in any manner, and for any consideration, their best interests may dictate. It is certainly optional with the ancestor to perfect title or to abandon the premises. The same option certainly descends to his statutory successors. He can abandon to his advantage by assigning for value his possession. They have the same pos-

session and the same option of abandonment, and why cannot they in abandonment reap the like advantage ? The statute is silent. But it is just as silent with regard to the ancestor as with regard to the heirs. Why then should not this statute, which is acknowledged to allow him, in its silence, the right to sell for value his possession, and in express terms brings forward the heirs to the same platform as himself for receiving the muniments of title, why should it not in its silence be held to permit to the heirs also, interested as they are in swelling the assets of the estate, a like beneficial sale? No good reason appears to us. We do not understand that the cases of *Delay* v. *Chapman* (3 Oregon, 459), and *Hall* v. *Russell* (3 Sawy. 506), which have been cited by defendants in error, announce any doctrine inconsistent with this. Those cases arose under the Donation Law and decide that the peculiar phraseology of that law indicates an intention of the government, upon death of the donation settler to deal thenceforth only and directly with the heirs. But the cases do not hold, that those heirs have no possessory rights of which they could for their own benefit dispose.

We think that the pre-emption statute, by naming the administrator as one who may proceed to perfect title in the heirs' behalf, clearly shows it to have been contemplated by Congress, that possession of the pre-emption claim would, on the pre-emptor's decease, fall where, under the jurisprudence of the States of this Union, bare possession of land would ordinarily fall, namely, to the administrator, and intended to put only one limitation upon the administrator in dealing with the possession, which limitation is, that he should, for all purposes of perfecting title, stand in possession as representing the ancestor for the benefit of the heirs, and not as representing him for the benefit of creditors and heirs alike. This limitation is identical in aim and spirit with the provision nullifying any transfer by the pre-emptor, of interest in the land. Banks are erected by the statute, on either side of the current of title flowing from the government, which prevent, as well after his death as during his lifetime, any diversion until a

descent is effected directly into the channel of his own blood. *Cochran* v. *McCoy*, 33 Ala. 65.

Briefly stated, we conclude the law to be, that the right of possession of pre-empted land, to which title is inchoate, passes on death of the pre-emptor, to his administrator; that the right of possession thus acquired is subject to a trust, which requires the administrator to proceed to perfect title in favor of the heirs, provided there are heirs, and the estate is in such condition as to enable him to do so, and the interests of the heirs, all all things considered, so demand; that for the discharge of this trust, he is answersable individually and upon his bond, as for the performance of any other duty; that aside from this trust, he is free to dispose of the possession for the best advantage of the estate; that no fraud of his in the premises will be presumed; and that when there is no administrator, or when the administrator consents, an heir may perfect the title.

If such were not the law, great and needless hardship would often ensue upon the death of pre-emptors, who had not been so fortunate as to complete their titles. Pre-emption settlers are usually persons in moderate circumstances. With many of them, daily bread is only bought with severe daily toil. Their living is cramped and painful because they are poor. Rapid improvement of their farms means amelioration of their way of life. Their claims become their savings-bank, and every excess of labor and material, over what is necessary for livelihood, is there deposited. Death takes the pre-emptor. His surviving family find themselves in possession of a few articles of furniture, a few animals—perhaps in all nothing but what must serve for immediate support—and beside these, they have possession of his claim and his improvements. Now, what shall they do? Shall they go on and perfect the title which the husband and father has left unfinished? They may not be able. Or it may not be advisable. In either contingency, what are they to do? Did death sweep into one grave, so far as they are concerned, the builder and all he built? Is, he being gone, all gone? What he left is valuable. Is it only a carcass to gather vultures? Or can the mere possessory right be sold, in this

case as in all ordinary cases, by virtue of common reason and common right, no express law speaking to the contrary. We hold that it can be so sold. *Grover* v. *Hawley, et al.*, 5 Cal. 486.

Such being our opinion, the judgment of the Court below must be reversed and a new trial granted, and it is so ordered.